NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ARDENIA M. JONES, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 10-06083 |
| v. | : | |
| | : | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| Defendant. | : | |

PISANO, District Judge:

Before the Court is the Appeal of Ardenia M. Jones ("Jones" or "Plaintiff") from the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her request for Disability Insurance Benefits ("DIB"). The Court has jurisdiction to review this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), and reaches its decision without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth herein, the Court finds that the record contains substantial evidence supporting the Administrative Law Judge's ("ALJ") decision, and therefore affirms the final decision of the Commissioner.

I.    PROCEDURAL HISTORY

Plaintiff filed an application for DIB on May 30, 2007, alleging that she was unable to work due to her disabling condition as of October 1, 2004. Administrative Record ("R.") 97. The SSA denied her claims both initially and on appeal. Upon Plaintiff's Request, a video hearing was held on March 29, 2010 before Administrative

1

Law Judge ("ALJ") Ramon E. Quiñones.  R. 28.  The ALJ denied Plaintiff's claim on May 21, 2010.  R. 6 – 26.  The Appeals Council subsequently denied Plaintiff's request for review.  R. 1.  On November 19, 2011, Plaintiff filed a Complaint in this Court alleging that the Commissioner's decision was not supported by substantial evidence.  Defendant's Response and the Administrative Record have been provided to the Court pursuant to Local Civil Rule 9.1.

## II.   BACKGROUND

Plaintiff was born on September 27, 1967.  R. 49.  She has a twelfth grade education, and has received some vocational training through the Mercer County Board of Social Services.  R. 124.  In the fifteen years prior to the alleged onset of her disability on October 1, 2004, Jones was in several occupations, including daycare, transportation, payroll administration and data entry.  R. 119, 140.  She stopped working on January 31, 2006.  R. 118.  Plaintiff has offered objective medical evidence from 2005 through 2010 to support her disability claim for the following conditions: asthma, osteoarthritis of the knees, carpal tunnel syndrome, lower back pain, swelling of the legs, obesity, hypertension, and depression.

Plaintiff testified that these conditions severely restrict her ability to function.  She testified that her back pain leaves her unable to sleep, and that her knee problems make walking, standing, and sitting very painful.  R. 30-32.  The Plaintiff's sister-in-law Della Wallace corroborated this testimony, adding that the Plaintiff is unable to wear shoes because of swelling, has difficulty bending over or bending her knees, and cannot lift or grip objects because of her hand pain.  R. 32-36.  Thus, she frequently requires

assistance with daily tasks such as dressing, cooking, and grocery shopping. *Id.* Ms. Wallace further conveyed that the Plaintiff's asthma is severe, that it caused at least two emergency room visits in the six months prior to the hearing, and that Plaintiff takes a nebulizer treatment for approximately one half-hour, two to four times a day. R. 36-38.

### III.    STANDARD OF REVIEW

A reviewing court must uphold the final decision of the Commissioner if it is supported by "substantial" evidence. 42 U.S.C. § 405(g); § 1383(c)(3); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992). For evidence to be deemed "substantial," it must be more than a "mere scintilla," *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 220 (1938), but may be slightly less than a preponderance. *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988). The inquiry is not whether the reviewing court would have made the same determination, but rather whether the Commissioner's conclusion was reasonable given the record before him. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

The reviewing court must review the evidence in its entirety. *See Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). As part of this review, the court "must 'take into account whatever in the record fairly detracts from its weight.'" *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988) (internal citation omitted)). The Commissioner has a corresponding obligation to facilitate the court's review: when the record shows conflicting evidence, the Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*,

677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)).

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)). Nevertheless, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182 (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### A. Establishing Disability

In order to be eligible for DIB benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person is disabled for these purposes only if her physical and mental impairments are "of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations set forth a five-step, sequential evaluation to determine whether an individual is disabled. 20 C.F.R. § 404.1520. For the first two steps, the claimant must establish (1) that she has not engaged in any "substantial gainful

4

activity" since the onset of his alleged disability, and (2) that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)-(c). The claimant bears the burden of establishing these first two requirements, and failure to satisfy either automatically results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n. 5 (1987).

If the claimant satisfies her initial burdens, the third step requires that she provide evidence that her impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations ("Listing of Impairments"). 20 C.F.R. § 404.1520(d). Upon such a showing, she is presumed to be disabled and is automatically entitled to disability benefits. *Id*. If she cannot provide such evidence, the benefit eligibility analysis proceeds to steps four and five.

The fourth step of the analysis focuses on whether the claimant's "residual functional capacity" ("RFC") sufficiently permits her to resume her previous employment. 20 C.F.R. § 404.1520(e). "Residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Id*. If the claimant is found to be capable of returning to her previous line of work, then she is not "disabled" and is therefore not entitled to disability benefits. *Id*. If, on the other hand, the claimant is unable to return to her previous work, the analysis proceeds to step five.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial gainful work. 20 C.F.R. § 404.1520(f). If the Commissioner cannot satisfy this burden, the claimant will receive Social Security benefits. *Yuckert*, 482 U.S. at 146-47 n.5.

### B. Objective Medical Evidence

Under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. and 42 U.S.C. § 1381 *et seq.,* a claimant is required to provide objective medical evidence in order to prove her disability. 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 42 U.S.C. § 1382c(a)(3)(H)(i) ("In making determinations with respect to disability under this subchapter, the provisions of [42 U.S.C.] § 423(d)(5)(A) of this title shall apply in the same manner as they apply to determinations of disability under subchapter II of this chapter.").

Accordingly, a plaintiff cannot prove that she is disabled based solely on her subjective complaints of pain and other symptoms. *See Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) ("[S]ubjective complaints of pain, without more, do not in themselves constitute disability."). She must provide medical findings that show that she has a medically determinable impairment. *See id.*; 42 U.S.C. § 423(d)(1)(A) (defining "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ."); 42 U.S.C. § 1382c(a)(3)(A) (same); 20 C.F.R. § 404.1529(b) ("[S]ymptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect [a claimaint's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present."); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that the ALJ failed to consider his subjective symptoms when the ALJ found that subjective symptoms were inconsistent

6

with objective medical evidence and the claimant's hearing testimony); *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (denying claimant benefits where he failed to proffer medical findings or signs that he was unable to work).

IV.   THE ALJ'S DECISION

On March 29, 2010, a video hearing was held before ALJ Ramon E. Quiñones. R. 9.  Plaintiff and her attorney appeared in Voorhees, New Jersey, and the ALJ presided over the hearing from San Juan, Puerto Rico.  R. 9.  In a written decision dated May 21, 2010, the ALJ denied Plaintiff's claim for DIB, concluding that she was not disabled from the alleged onset date through the date last insured.  R. 6-25.

After considering all of the evidence in the record, the ALJ made the initial determination that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2009.  R. 11.  He then proceeded to the five-step sequential analysis required under 20 C.F.R. § 404.1520.  At step one, he found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date, October 1, 2004.  R. 11.  At step two, he concluded that Plaintiff had the following severe impairments: bilateral knee osteoarthritis and asthma.

The ALJ further determined that the evidence did not substantiate the alleged level of severity as to the Plaintiff's other conditions.  R. 11.  Specifically, he reviewed the medical records relating to low-back pain and found that Plaintiff's complaints "were so scarce and infrequent and that (besides pain and tenderness) there were no persistent functional limitations."  R. 12.  He found that the medical evidence regarding hypertension showed that it was controlled by medication and had not "caused any severe

complication or limitation." R. 13. A diagnosis of "minor depression" and the dearth of medical evidence regarding treatment of or even reference to depression led the ALJ to the conclusion that this condition, too, was not severe. R. 13. The ALJ performed the required "individualized assessment" of the severity of Plaintiff's obesity, R. 13, and found that there was no medical evidence linking her obesity to any "complication or specific functional limitation." R. 14.

The ALJ also found that Plaintiff had not met her burden to show that her carpal tunnel syndrome was disabling. He considered the medical records relating to Plaintiff's carpal tunnel syndrome, including the February 2008 nerve conduction study that was consistent with "moderately severe" bilateral carpal tunnel syndrome. In rejecting the Plaintiff's claim of severity, the ALJ noted the "unremarkable findings" of two consulting physicians in October 2007 and May 2008, and that the Plaintiff chose hand splints and pain relievers to treat her carpal tunnel syndrome rather than injections and surgery. R. 12. More recent evaluations also indicated to the ALJ that the Plaintiff's choice of conservative treatments "apparently were effective." R. 12-13.

Proceeding to step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 14-15. Specifically, he determined that the Plaintiff had not shown that her bilateral knee osteoarthritis "caused an extreme limitation in her ability to ambulate effectively" as required under listing 1.02, which relates to major dysfunction of a joint(s). He further found that the Plaintiff did not meet the requirements for listing under Section 3.03 which refers to asthma. This listing has specific evidentiary standards for chronic asthmatic bronchitis or attacks, in

8

spite of prescribed treatment and requiring physician intervention. R. 14-15. The Plaintiff had not shown that she had experienced the specific level of frequency and severity of attacks described in Section 3.03. R. 14-15.

The ALJ finally determined that Plaintiff had the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). R. 15-20. Thus, he concluded that she was capable of lifting and carrying objects weighing up to ten pounds, could sit for a total of six hours during the course of an eight-hour workday, and could stand/walk for up to two hours. R. 15. In making his finding as to Plaintiff's RFC, the ALJ further noted that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence . . . ." R. 15. He evaluated the "intensity, persistence, and limiting effects" of those symptoms, first in light of any objective medical evidence, and if such evidence was unavailable, in light of a credibility determination. R. 15-20.

The ALJ listed all of the Plaintiff's alleged disabling conditions in some detail, describing the Plaintiff's own testimony and that of her mother and sister-in-law regarding her functional limitations. R. 16. As for the alleged symptoms, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. R. 17. However, he found Plaintiff's statements concerning the intensity, persistence and limiting effects of those alleged symptoms to be "not credible to the extent they are inconsistent with" the RFC assessment. R. 17. In reaching this conclusion, the ALJ evaluated the two most severe conditions, bilateral knee osteoarthritis and asthma, in greatest detail. Specifically recounting the reports of both treating and consulting physicians showing that these

conditions were responsive to treatment and under control, the ALJ determined that they were not disabling. R. 17. He noted that her knee osteoarthritis had been treated with pain relievers and occasional physical therapy, that her asthma had likewise been treated with several medications, and that she had been repeatedly advised to quit smoking. R. 18-20. The ALJ also considered the RFC assessments done by agency consultants on November 12, 2007, and June 18, 2008. He found that these assessments overestimated the Plaintiff's capacity for carrying and lifting, resulting in an RFC for sedentary work. R. 19. Summarizing his findings, the ALJ noted that the Plaintiff's conditions were being treated conservatively, that she had no hospitalizations, and that her recent physical exams contradicted her alleged functional limitations. R. 20.

Having determined Plaintiff's RFC, the ALJ proceeded to step four of the sequential evaluation. R. 20. At step four, he concluded that Plaintiff was capable of performing past relevant work as a data entry clerk, reasoning that such work is generally performed at the sedentary exertional level—both as defined in the Dictionary of Occupational Titles and by Plaintiff's own description. R. 20.

## V.     DISCUSSION

The Plaintiff contends in this Appeal that the ALJ's decision erred in four ways. First, she alleges that the ALJ should have obtained vocational evidence to determine whether her nebulizer treatments for her asthma would have required an accommodation from an employer, thereby excluding her from past relevant work. Second, the Plaintiff argues that the ALJ did not properly consider the limitations he had found to be non-severe while performing his RFC analysis. Third, she argues that the ALJ did not

properly evaluate lay testimony. Finally, she asserts that the ALJ had an affirmative duty to further develop the medical record by obtaining a mental health evaluation.

### A. The ALJ's consideration of interference of asthma treatments with work

The ALJ reasonably concluded that the Plaintiff did not meet her burden under step four to prove that her asthma did not preclude her from returning to her past relevant work. The Plaintiff claims that "being labeled as being stable with medication should not raise an inference that the subject has little or no impairment." Pl. Br. 17 (citing *Morales v. Apfel*, 225 F.3d 310 (3d Cir. 2000); *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999). She also argues that a prior job with employer accommodations for disabilities does not qualify as past relevant employment under step four. Pl. Br. at 18 (citing *Klitz v. Barnhart*, 180 Fed. Appx. 808 (10th Cir. 2006); *Jones v. Apfel*, 174 F.3d 692 (5th Cir. 1999); *Eback v. Chater*, 94 F.3d 410 (8th Cir. 1996)). What Plaintiff has not recognized, however, is that she bore the burden of proof at step four, and that she can point to no evidence that was not appropriately considered and weighed by the ALJ at this stage of the analysis.

Unless and until the ALJ reaches step five of the analysis, the Plaintiff has the burden of proof. *Adorno v. Shalala*, 40 F.3d 43, 46 (3d. Cir. 1994). The Plaintiff, however, misstates the standard as though the burden of proof were on the Commissioner. Pl. Br. 19 ("[T]here is no evidence that the job the plaintiff did . . . accommodated the use of a nebulizer several times a day."). The Plaintiff asserts that "[t]he proper conclusion is that there is no evidence that the plaintiff can, in fact, return to her prior work without an accommodation." Pl. Br. 19. However, the ALJ had to

11

determine whether the Plaintiff had met her burden to prove that she *could not* return to her prior work.

Furthermore, the Plaintiff cannot argue that the ALJ did not come to "the proper conclusion." Rather, she must show that his decision was not based on substantial evidence. 42 U.S.C. § 405(g); § 1383(c)(3); *Williams*, 970 F.2d at 1182. The ALJ's conclusion that her asthma would not interfere with her past relevant work undoubtedly meets the substantial evidence standard. Plaintiff's medical records contained scarce and somewhat varied evidence regarding the advice of her doctors as to the frequency of her nebulizer treatments, ranging from twice daily to every four hours. R. 332, 335, 341, 381, 382, 386. The Social Security regulations contemplate scheduled breaks and a lunch period, SSR 96-9p, 1996 SSR LEXIS 3 (July 2, 1996), and the ALJ did recognize that her asthma was severe and imposed work-related limitations, requiring her to avoid poor ventilation, extreme temperatures, fumes, etc. R. 15. Also of note is the repeated advisement by Plaintiff's treating physicians to quit smoking, R. 18, which casts some doubt on the credibility of Plaintiff's claims relating to her asthma.

Plaintiff can point to no evidence that the ALJ failed to consider suggesting that her treatments would interfere with work. The ALJ considered all of the relevant evidence, including lay testimony regarding the frequency and severity of Plaintiff's asthma attacks, and the descriptions provided of the necessity and nature of her treatments. R. 16, 18-19. Plaintiff was required to prove at step four that her asthma precluded her from performing her past relevant work, and the ALJ reasonably found that the evidence did not meet this standard.

### B. The ALJ's consideration of non-severe limitations

The Plaintiff claims that the ALJ did not sufficiently consider her non-severe limitations in formulating his RFC at step four. Specifically, she argues that her carpal tunnel syndrome should have been considered in the RFC analysis. The argument, however, reads as an attack on the ALJ's decision at step two that her carpal tunnel was not in itself disabling. The Court finds that there was both sufficient evidence supporting the ALJ's finding at step two that Plaintiff's carpal tunnel syndrome was not severe, and sufficient evidence supporting the ALJ's RFC determination at step four in light of the entire range of Plaintiff's medical conditions.

With regard to the severity of her carpal tunnel syndrome, the Plaintiff alleges that the ALJ improperly gave too much weight to the RFC assessments of non-treating physicians, especially because one such assessment predated her complaint of the condition. Pl. Br. 22. The Plaintiff believes that a nerve conduction study compatible with "moderately severe" carpal tunnel syndrome conclusively shows that the ALJ underrated the condition's severity. R. 12.

The ALJ is not required to prioritize the most recent medical records, nor is he required to prioritize the reports of treating physicians. "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. Pa. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)). The Third Circuit has held that the "substantial evidence" standard may be satisfied where the ALJ's decision is based on records "much older than those presented in this case." *Chandler*, 667 F.3d at 360-61 ( (citing *Morales*, 225 F.3d at 312-13 (upholding a 1997 ALJ decision based on records

13

from 1989 through 1994); *Hartranft*, 181 F.3d at 360-61 (finding substantial evidence where the ALJ relied on six-year-old medical records)).  Furthermore, "[a]lthough treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, '[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.' *Id.* (citing 20 C.F.R. § 404.1527(d)(1)–(2); *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)). Stage agent opinions "merit significant consideration" because of their expertise in the Social Security disability programs. *Id.* (citing SSR 96-6p, 1996 SSR LEXIS 3 (July 2, 1996).  Thus, the Plaintiff's argument that the ALJ assigned the wrong weight to different medical records is unwarranted as a matter of law.

Moreover, the Plaintiff's suggestion that the ALJ did not even consider all of the relevant evidence is incorrect.  The ALJ "did not merely rubber stamp" the conclusions of the state agency medical consultants with regard to Plaintiff's carpal tunnel syndrome. *Chandler*, 667 F.3d at 361 (citing 20 C.F.R. § 404.1527(f)(1)(i)).  He did not "dismiss" the nerve conduction study as the Plaintiff claims, Pl. Br. 23, but rather considered and weighed it along with the other evidence.  He simply reached a different conclusion than the one urged by the Plaintiff, and found that the combined weight of all the physical examinations across a range of time periods, along with the conservative treatments chosen by the Plaintiff herself, conflicted with her claims of severity. R. 12-13.

Finally, the Plaintiff claims that the ALJ did not sufficiently discuss the impact that even non-severe carpal tunnel syndrome may have on the fine motor skills required in most sedentary work, including that of a data entry clerk. Pl. Br. 24-26.  The Plaintiff correctly notes that the Commissioner must "consider the combined effect of all the

14

individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity" to qualify for benefits. 42 U.S.C. § 423(d)(2)(B). However, it bears noting once more that the burden was still upon Plaintiff at this stage of the analysis to prove not merely that her medical conditions existed, but that they caused functional limitations. *Alexander v. Shalala*, 927 F. Supp. 785, 792-93 (D.N.J. 1995).

With this in mind, the Court finds that the ALJ adequately considered Plaintiff's non-severe carpal tunnel syndrome at step four. Having already discussed the level of severity of her carpal tunnel syndrome at step three, there was no need for him to repeat these findings in detail. He did, however, take into account "all symptoms" alleged by Plaintiff, summarizing her allegations including the non-severe limitations. R. 15-17. He also specifically mentioned the "frequent reaching and handling and constant fingering" required of data entry clerks. R. 20. That the ALJ went into greatest detail about those limitations he had found to be severe stands to reason, and does not lead to the conclusion that he failed to consider the cumulative impact of all of Plaintiff's ailments.

### C. The ALJ's consideration of lay testimony

The Plaintiff argues that the ALJ failed to consider the lay testimony provided in support of her showings of severity and functional limitations. She asserts that the ALJ erred by "summariz[ing] the testimony but fail[ing] to make any credibility determination." Pl. Br. 27. This is not an accurate interpretation of the law or of the ALJ's decision.

First, the standard in this Court is whether there was substantial evidence in the record to support the ALJ's decision. This takes into account the ALJ's duty to actually consider the evidence and explain the weight he has accorded it, *see*, *e.g.*, *Gober*, 574

F.2d at 776, but it does not require the ALJ to engage in the precise analysis demanded by the Plaintiff.  It is true that he "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). However, the Court may not weigh the evidence or overturn the Commissioner's decision simply because we disagree with the fact-finder's conclusions.  *Williams*, 970 F.2d at 1182.

Despite the Plaintiff's assertion that he made no credibility determination, the ALJ specifically discussed credibility and appropriately considered evidence affecting the Plaintiff's credibility.  A plaintiff cannot prove that she is disabled based solely on her subjective complaints of pain and other symptoms.  *See e.g. Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) ("[S]ubjective complaints of pain, without more, do not in themselves constitute disability.").  However, where pain or other symptoms are alleged, the ALJ must evaluate the plaintiff's complaints in conjunction with the objective medical and other evidence of record.  *Schaudeck v. Commissioner of Social Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999).  Similarly, although the ALJ has discretion "to evaluate the credibility of a claimant and to arrive at an independent judgment in light of medical findings and other evidence regarding the true extent of the pain alleged by the claimant," *Brown v. Schweiker,* 562 F.Supp. 284, 287 (E.D. Pa. 1983), if the ALJ concludes that testimony is not credible, he must indicate the basis for that conclusion in his decision. *Cotter v. Harris,* 642 F.2d 700, 705–706 (3d Cir. 1981).

Here, in reaching his decision, the ALJ expressly "considered all symptoms and the extent to which [they] can reasonably be accepted as consistent with the objective

medical evidence and other evidence." R. 15. He then explained, by way of specific examples in the record, that although Plaintiff's impairments could be expected to cause the symptoms she alleged, her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC]." R. 17. For example, he pointed to the reports of treating physicians showing that her arthritis, asthma, and other conditions were under control and stable with treatment, and reporting her as independent with respect to ambulation and other relevant functions. R. 17-20. Notably, the ALJ found based on the records of treating physicians that she had more functional restrictions than those found by the state agency consultants. R. 19. He also noted certain of Plaintiff's own actions that conflicted with her claims of severity, including the conservative treatments chosen for her carpal tunnel syndrome and the repeated advice she received from physicians to stop smoking and to enroll in a weight loss program. R. 12-13, 17-18. Thus, the ALJ appropriately evaluated lay testimony in light of the objective medical evidence and the Plaintiff's credibility.

### D. The ALJ's failure to obtain a mental health evaluation

The Plaintiff finally argues that, largely due to "an observable breakdown in the hearing room," the ALJ had a duty to request a mental health evaluation to further develop the record with regard to Plaintiff's alleged depression. Pl. Br. 28-29. In support, the Plaintiff cites cases for the proposition that the ALJ is in the role of an inquiring magistrate with a duty to develop the record where existing evidence is insufficient. Pl. Br. 28-29 (citing *Colavito v. Apfel*, 75 F. Supp. 2d 385, 389 (E.D. Pa. 1999); *Sims v. Apfel*, 530 U.S. 103 (2000)).

17

The ALJ is permitted to reach RFC determinations "without outside medical expert review of each fact incorporated into the decision." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 404.1527(e); SSR 96-5p, 1996 SSR LEXIS 2 (July 2, 1996)).  Thus, despite his duty to ensure that the record is sufficiently developed, *e.g. Colavito*, 75 F. Supp. 2d at 389 (citing 20 C.F.R. § 416.927(c)(3)), it is clear that the ALJ is not required to seek additional expert review of every one of his conclusions.

This was not a case in which the existing record was insufficient for the ALJ to draw any conclusion.  Rather, the Plaintiff's argument would require him to go far beyond his basic duty to ensure a sufficiently developed record.  Plaintiff asserts that her demeanor at the hearing required the ALJ to infer that her alleged depression was potentially more severe than indicated by the existing evidence.  This is tantamount to arguing that the burden of proof should shift to the ALJ himself to produce medical evidence supporting Plaintiff's application.  The Plaintiff did not meet her burden to show that her depression was severe or significantly interfered with her work, and cannot now argue that the ALJ should have *sua sponte* demanded further evidence on this point.

## VI.   CONCLUSION

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's decision denying Plaintiff DIB benefits.  Therefore, the Court affirms the final decision of the Commissioner.  An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano\
JOEL A. PISANO\
United States District Judge

Dated:  April 17, 2012

18